HERCKENRATH and VAN DAMME *vs.* THE AMERICAN MU
TUAL INSURANCE COMPANY and others.

Where a corporation has underwritten a policy, and afterwards causes itself to be
   reinsured and after the loss of the property insured such corporation becomes
   insolvent, the person originally insured has no equitable lien, or preferable claim,
   upon the sum of money due on the contract of reinsurance. But that fund be-
   longs to all the creditors of the insolvent corporation ratably ; under the provisions
   of the revised statutes relative to proceedings against corporations in equity.
The risk which the first insurer had assumed, forms, as between him and the re-
   insurer, the subject matter of the reinsurance. And such reinsurance is a new
   contract, entirely distinct from the first, which still subsists in all its force.
From the nature of the contract of reinsurance, and the want of privity between the
   re-insurer and the person first insured, it does not come within the rule that the
   principal creditor, in equity, is entitled to the benefit of all counter bonds and col-
   lateral securities given by the principal debtor to his surety.
*It seems* that upon a contract of reinsurance the reinsurer is bound to pay the
   amount which the original insurer becomes legally liable to pay to the assured
   in consequence of the risk assumed, and not merely the amount which the original
   insurer actually pays in consequence of the risk assumed by him.

THIS was an application, by The American Mutual Insu-
rance Company, to dissolve an injunction restraining that compa-
ny from receiving, and The Mutual Safety Insurance Company
from paying, the amount due from the last mentioned company
upon a policy of reassurance. The motion was made upon the
matter of the bill only.

The American Mutual Insurance Company insured the com-
plainants, $22,000, upon merchandize and other property in a
store in Broad-street in New-York, and afterwards caused itself
to be reinsured to the amount of $10,000, by The Mutual
Safety Insurance Company, upon the same risk. During the
running of these policies, the property was destroyed by the
great fire in Broad-street, in July, 1845. The American Mu-
tual Insurance Company having become insolvent, in conse-
quence of losses occasioned by that fire, the question presented
by the bill in this cause was whether the complainants had an
equitable lien, or preferable claim, upon the fund of $10,000,
due upon the reassurance, or whether that fund belonged to al
the creditors of the insolvent company ratably ?

Herckenrath *v.* The American Mutual Insurance Co.

*E. Sandford,* for the complainants. The reinsurance of $10,000, made by the American Mutual Insurance Company with the Mutual Safety Insurance Company, upon the goods of the complainants, should be deemed in equity to have been made in trust for the complainants. It is the property at risk of the original assured that feeds the contract of reinsurance and upon which alone the liability of the reinsurer arises, and the damage upon which forms the measure of his liability. The only benefit an insurance company effecting a reinsurance upon a risk taken by them can legally acquire is from the premium earned before effecting the reinsurance and the difference between the premium received and the premium paid. In this case the difference thus made was five cents on $100—$5.

Upon effecting that reinsurance to the amount of $10,000 upon the goods of the complainants so insured, the American Mutual Insurance Company stood, in equity, in the situation of a surety for the Mutual Safety Insurance Company, to the extent of $10,000. The Mutual Safety Insurance Company, to the extent of $10,000, was substituted in the place of the American Mutual Insurance Company, as underwriters against any loss to be sustained by the complainants, and the complainants are entitled, in equity, to enforce the obligation of the Mutual Safety Insurance Company, and compel the payment, by them, of the amount of the complainants' loss, which was assumed by their policy.

The general creditors of the American Mutual Insurance Company have no legal right, nor any equitable title, to a fund created solely by the loss of the complainants' property. As between the complainants and such creditors, the case stands as though the American Mutual Insurance Company had originally insured the complainants in the sum of $12,000.

The complainants have a lien upon the policy of reinsurance made by the Mutual Safety Insurance Company, which a court of equity will establish and enforce by reason of their interest in the subject matter of that contract. It is the doctrine of a court of equity that an agreement in relation to a subject, binds the subject itself; and the court will interfere to establish a right

in behalf of the owner of the subject, upon the ground of personal performance.

A privity of contract arose, by implication of law, between the complainants and the Mutual Safety Insurance Company, upon their engaging to indemnify the American Mutual Insurance Company, to the extent of $10,000, against a loss by fire of the complainants' property. A promise made by B. to C., for the benefit of D., will give D. a right to maintain an action at law upon it.

*B. D. Silliman,* for the Am. Mutual Ins. Co. The complainants have no specific claim to this fund, either as against the reinsurer or the reinsured. They are only entitled to share it *pro rata* with the other creditors of the insolvent company, (through the receivers.) There was no privity, as to the contract of reinsurance, between the complainants and either of the other parties. They had no concern with, and knew nothing of, the reinsurance, which was procured, not to secure the payment to them of their debt, but to protect the assets of the reassured against such loss as they might become *liable* to pay under the first policy of insurance. The reassured did not thereby diminish their liability to the complainants. The premium for the reinsurance was paid out of the common fund pledged for the security of all the creditors, and was paid to protect that fund.

The contract of reinsurance, and the rights and liabilities under it, are well defined, and have been so from a very early period. The rule is that the *reassurer* must pay to the *reassured* (The Am. Ins. Co.) the amount which the latter *has become liable* to pay. It makes no difference that the first insurer has not paid, or will not be able to pay, the insured in full. This rule results from all the authorities in France, England, and this country. (*Emerigon, tom.* 1, 247. *Roccus, note* 12, *and the earlier writers cited by Emerigon and Roccus. Boulay Paty, ch.* 8, *sec.* 14, *ed.* 1827. *Pardessus, Droit Commercial, sec.* 593. *Alauzet, Traite des Assurances, vol.* 1, *p.* 152. *Park on Ins.* 276, 280. *Burns,* 59, 60. *Weskett,* 456. *Phillips,* 2, 58. *Condy's Marshall,* 143. 3 *Kent's Com.* 278.)

The first insured, (the complainants,) have no other or better claim to the reinsurance money than the other creditors of the American Mutual Insurance Co. have to it, but must come in *pro rata* with them. This has been expressly decided in the cases stated by Emerigon, *ut supra*, vol. 1, p. 247, &c. and is held to be the rule by the other writers to whom I have before referred. (*See also Hastie v. Depeyster, 3 Caines, 190, and note.*)

The rule in equity that a creditor is entitled to the benefit of all collateral obligations, *for payment of his debt*, which his debtor acquires, and that the creditor is entitled to the benefit of the securities which the principal debtor has given to his surety, can have no relation to this case. The cases are not parallel, and the reinsurance does not grow out of any relation of suretiship. (*Ib Id.*) The reinsurance is an independent contract, purely personal between the parties making it, and the first insured has no connection with it, or right to it. This is not a case of suretiship, even as between the reinsurer and the reinsured; for the former cannot avail himself of a compromise between the latter and the first insured. Nor can he avail himself of the diminished payment made by the first insurer to his creditor on account of bankruptcy. The principle that a mortgagor may insure his property for his own protection, and recover the amount of his insurance, notwithstanding the mortgage debt remains unpaid, is analogous and applicable to this case. (*Carpenter v. Providence Ins. Co. 16 Peters, 495, per Story, J. at p. 501. Col. Ins. Co. v. Lawrence, 10 Id. 507, 512. Rockett v. Carter, 8 Paige, 437. Hosack v. Rogers, 6 Id. 427; S. C. 18 Wend. 319.*) In England reinsurance is allowed only in case of the death or insolvency of the first insurer. (*19th Geo. 2, ch. 37, § 4.*) Thus reinsurance is provided for the very case of a bankrupt insurer; and yet not an instance is to be found in the English books where the insured creditor of the bankrupt was held to have any better claim on the reinsurance money than the other creditors. On the contrary, Park, Burns, and Weskett, (as well as Kent cited above,) distinctly intimate that he will come in *pro rata* with them.

Herckenrath *v.* The American Mutual Insurance Co.

(*Park,* 278, *ch.* 15, *London ed.* 1796.   *Burns,* 60, *ch.* 3, *Lon
don ed.* 1801.   *Weskett,* 456, 457, *Dublin ed.* 1794.)

The complainants claim results from confounding a *reinsur-
ance* with *double insurance.*   Mr. Park says, they are often con-
founded, though nothing is more distinct than the one from the
other of them.   In double insurance the insured (who has caused
both parties to become responsible *to him*) can sue either the first
or the second insurer.   The complainants had the right to procure
for themselves a double insurance and had also a right to procure
an insurance of the first insurer's solvency.   They did neither.
(*Park.* 280.   *Christian's note,* 16, *to* 2 *Bl. Com. p.* 460.)

The complainants' proposition that the reinsured, on receiv
ing the whole amount of the insurance money, become gainers
and make a profit by the complainants' loss, unless the latter is
paid in full, is erroneous.   The reinsured retain nothing.   They
owe the whole amount of the complainants' loss and of the losses
of all other creditors; but their insolvency having intervened, the
statute controls the mode of distributing their assets, forbids the
payment in full of complainants' claim, and requires a ratable
distribution among the creditors.   The reinsured has lost the
whole amount of the subject matter of the reinsurance.   It is
none the less a loss because they are unable to pay it in full,
and because this risk, (in common with other losses,) has de-
stroyed them.

THE CHANCELLOR.   The question presented in this case is
one of considerable importance.   But as the contract of reas-
surance was virtually prohibited in England more than one
hundred years since, and before the principles of the law of in-
surance had been well settled there, nothing is found in the
English reports upon this point.   And, so far as I have been
able to discover, the question has not heretofore arisen before
any of the courts of this country for decision.   The validity of
the contract of reassurance was early acknowledged among
the maritime nations of Europe; being found in the *Guidon.*
and also in the marine ordinances of Louis the fourteenth.  (*Le
Guid. ch.* 2, *art.* 19;   *Ord. of* 1681, *tit. Assur. art.* 20.)   It is

expressly authorized by the present commercial codes of France and of Spain. (*French Com. Code, art.* 342. *Com. Code of Spain, art.* 852.) It is also recognized, by our courts, as a valid contract here. (*Hastie & Patrick* v. *De Peyster & Charlton,* 3 *Caines' Ca.* 190. *Bowery Fire Insurance Company* v. *New-York Fire Insurance Company;* 17 *Wend.* 359.) And I believe it is a species of insurance which is in common use in many of the other states of the union, as well as with us. I have, therefore, considered it proper to examine the question raised by the bill in this case, with considerable care, and to endeavor to arrive at a correct conclusion thereon.

Valin, if he has not confounded a reinsurance of the first in-surer, against the risk he has assumed, with what is said in the 20th article of the *Guidon*, as to a reassurance obtained by the person originally insured, against the insolvency of his first insurer, decides the question in favor of the claim of the complainants in this suit. For, in his commentary upon the 20th article of the ordinance of 1681, relative to insurances, he says, the insurer, who procures a reassurance, remains subject to the same obligation to the person previously insured by him, while he causes his own *solvency* to be insured. That the effect of it is, that the person insured has two insurers in-stead of one, with a perfect right of action directly, and in solido, against each of them ; so that he is not obliged to pro-ceed against the first insurer before attacking the second, provided the engagement in solido has been stipulated in the policy of reassurance ; otherwise a discussion will be necessary. (2 *Becane's Valin,* b. 3, *tit.* 6, *art.* 20, *p.* 278.) Emerigon, however, is of an entirely different opinion. He says, the *risk* which the first insurer has assumed, forms, as between him and the reinsurer, the subject matter of the reinsurance ; which is a new contract, entirely distinct from the first which still sub-sists in all its force. For that reason, the premium of reinsu-rance may be greater, or it may be less, than that upon the first insurance. If the premium is less, it is a gain which the first insurer makes ; if it is more, it is his loss. It is no concern of the person first insured, who is not brought into this new con-

tract. And to sustain this position Emerigon refers to Pothier.. He says, it follows from this principle that the person first insured cannot sustain a suit upon the reinsurance. To support this principle he cites two decisions of the French commercial courts, in which it was expressly decided that the person originally insured was not entitled to the benefit of the reassurance in case of the failure of his insurer. The first was decided in 1763; where the first insurer, after having procured himself to be reinsured, became a bankrupt. The subject matter of the first insurance having been lost by the perils insured against, the persons who were originally insured claimed a lien, or a right to a preference in payment, to the extent of their loss, out of the fund produced by the reassurance. This claim was contested by the general creditors of the bankrupt; and the court rejected the claim of preference made by the persons insured by him. The second case, which arose fifteen or twenty years afterwards, was substantially the same, in all its circumstances, and was decided in the same way. (1 *Emer. Traité des Assur. ch.* 8, § 14.) And to show that the reassurance is not a contract for the benefit of the person first assured, and merely to indemnify the insurer for what he actually pays upon his own insurance, in case of loss, Emerigon cites a decision by the commercial court at Marseilles, in 1748. There the original insurer failed, and by the compromise, with the assured and his other creditors, the insurer only paid sixty per cent upon the amount of his debts. The reinsurer thereupon claimed the benefit of a deduction, to that extent, upon the policy underwritten by him. But the court held that the reinsurer was bound to pay what the original insurer became *liable* to pay, to the first assured, in consequence of the loss of the subject matter of the first insuance; and not what he had *actually* paid, upon the compromise with his creditors, as an insolvent debtor. And judgment was accordingly given against the reinsurer, for the whole amount of the reinsurance.

*Delvincourt,* a very recent French writer, in his institutes of commercial law, after stating the opinions of Valin and of Emerigon, upon the questions now under consideration, arrives

at the conclusion that the opinion of Emerigon is in conformity with the true principles of the contract of reinsurance. And that the reinsurance was, as to the first assured, *res inter alios acta.* (2 *Delv. Inst. de Droit Com.* 338.) Persil, Quenault, and Grun & Joliat, modern French writers on the law of life and fire insurances, as well as Pardessus and Alauzet, also state the law on this subject, as laid down by Emerigon, without objection. (*Persil des Assur. Terrest.* 117, *art.* 92. *Quen. Traité des Assur. Terrest.* 29. *Grun & Joliat, Assur. Terrest. &c.* 189. 1 *Alauz. Traité des Assur.* 277.)

The law on this subject appears to be understood in the same way in Scotland. For Bell, after stating that the insurer has himself an insurable interest, which he may protect by a reinsurance, says : " This transaction, in the event of the original insurer's insolvency, the person originally insured has no interest in, and cannot recover from the last insurer in any other way than in common with the other creditors of the first insurer." (2 *Bell's Law Dict.* 93, *art. Insurance.*) Millar says a reinsurance is a hedging contract, by which the underwriter withdraws himself from all risk ; and that an insurance against insolvency is a contrivance by which the assured strengthens his former security. (*Mill. on Ins.* 233.) And Marshall understands the law in England, on this subject, to be the same that it is stated by Emerigon to be in France ; although he refers to no English decisions. (1 *Condy's Marsh.* 143.) Judge Livingston also, in the case of *Hastie* v. *De Peyster*, says there is no privity at all between the person originally insured and the reinsurer. (3 *Caines' Rep.* 196.)

The weight of authority, therefore, is decidedly against Valin upon this question. And from the nature of the contract of reinsurance, and the want of privity between the reinsurer and the person first insured, I think it does not come within the rule, that the principal creditor is, in equity, entitled to the benefit of all counter bonds and collateral securities given by the principal debtor to his surety.

The claim of the complainants, therefore, cannot be sustained ;

and the motion of the defendant, The American Mutual Insurance Company, to dissolve the injunction, must be granted with costs.