(35 Misc. Rep. 40.)

HOFFMAN v. NORTH BRITISH & MERCANTILE INS. CO. OF EDIN-BURGH & LONDON.

(Supreme Court, Appellate Term. May 6, 1901.)

INSURANCE—CONTRACT TO REINSURE—POLICY HOLDER'S RIGHT TO ENFORCE.
Defendant insurance company contracted to assume all the risks of the T. Insurance Company, in consideration of certain payments and premiums, and the contract provided that it should be void unless payments as stated therein were duly made, and that the agreement was temporary, and should be replaced by a final contract of like terms and con-

ditions, when the total amount due thereon was determined.  A default was made in the payment of such sums, whereupon the T. Company was notified by defendant that by reason thereof they declared the contract null and void.  *Held*, that a policy holder in the T. Company was not entitled to recover a loss against defendant on account of such reinsurance, there being no privity of contract between the insured and defendant, and the contract between defendant and the T. Company being abrogated by the T. Company's failure to perform conditions precedent to defendant's liability

Appeal from municipal court, borough of Manhattan, First district.

Action by Harry Hoffman against the North British & Mercantile Insurance Company of Edinburgh & London.  From a judgment of the New York City municipal court in favor of plaintiff, defendant appeals.  Reversed.

Argued before BISCHOFF, Jr., P. J., and CLARKE and LEVENTRITT, JJ.

Bowers & Sands, for appellant.

Leo Levy, for respondent.

CLARKE, J.  On the 24th of April, 1900, plaintiff's assignor took out a policy of insurance against fire in the Traders' Insurance Company of New York in the sum of $1,000 on his stock of goods, and paid therefor a premium of $20.  On the 27th of April, 1900, the Traders' Insurance Company and the North British & Mercantile Insurance Company of Edinburgh & London made an agreement in writing whereby, upon the payment of $10,000 before 12 o'clock noon on April 28th, the latter company (the defendant) agreed "to assume the fire risks of the Traders' Fire Insurance Company of New York from six o'clock p. m., April 27, 1900, not otherwise reinsured; a further payment on account of $25,000 to be paid on or before May 1st; and the balance due, namely, the net unearned premiums on outstanding policies, less 15% commission thereon, to be paid upon completion of schedules, and at least within thirty days from date thereof; this contract to be null and void unless payments as above stated are duly made.  This temporary agreement to be replaced by a final contract of like terms and conditions, when the total amount due thereunder is determined as per schedule."  It is quite evident from this contract, and from the proceedings ensuing thereon and thereunder, that the transaction between the two companies was intended to be of the same character as that described in Fischer v. Insurance Co., 69 N. Y. 161.  "One insurance company was about to discontinue its business, and cease to carry out its contracts with its policy holders.  Another insurance company, in consideration of a transfer to it of nearly all the assets of the former, was about to agree to take upon itself the liability of the former to its policy holders."  If the "final contract, of like terms and conditions," alluded to in the agreement of April 27th, had been executed, and the consideration paid, there can be no doubt but that the facts would have been on all fours with those set forth in Glen v. Insurance Co., 56 N. Y. 379, and the doctrine of that case—"it is the settled law that the plaintiffs [policy holders] might maintain this action against the defendant on the

policies which by the agreement it had assumed"—would govern. But the difficulty is that the final contract never was entered into between the two insurance companies. After several extensions by mutual consent, the Traders' Company not having paid the sums due at the day finally fixed, defendant wrote to it, August 3d: "You will please take notice that you have made default in the contract entered into by and between your company and the North British and Mercantile Company of London and Edinburgh, bearing date the 27th of April, 1900. We hereby declare said contract to be null and void." The said payments were conditions precedent. The said contract on its face stated it was a "temporary agreement." It expressly provided: "This contract to be null and void unless payments as above stated are duly made." The consideration for the permanent contract having failed, it was not made, and the temporary agreement or option became and was declared to be null and void. Under such circumstances, during the period in which the temporary arrangement was in force, the defendant company was, at best, a reinsurer of the policies of the Traders' Company, and, as there was no privity of contract with plaintiff's assignor, he has no cause of action. In the Glen Case the contract had been executed and completed, and it provided, in terms, that the company taking over the business "hereby agrees to assume all such policies, and to pay the holders thereof all such sums as the party of the second part may, by force of such policies, become liable to pay." Under the facts in this case, no such final contract was ever made, though in contemplation, by reason of the failure of consideration. Said the court of appeals in Dunning v. Leavitt, 85 N. Y. 30: "But I know of no authority to support the proposition that a person not a party to the promise, but for whose benefit the promise is made, can maintain an action to enforce the promise, where the promise is void, as between the promisor and promisee, for fraud or want of consideration or failure of consideration."

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.