SOFIA BROTHERS, INC., Plaintiff, *v.* GENERAL REINSURANCE CORPORATION and Others, Defendants.

Supreme Court, New York County, September 27, 1934.

*Frank Reiss* [*M. Maldwin Fertig* of counsel], for the plaintiff.

*Cabell, Ignatius, Lown & Blinken,* for the defendant General Reinsurance Corporation.

*Lester Weil,* for the defendant liquidator of Consolidated Indemnity and Insurance Company.

COLLINS, J. This attack on the legal sufficiency of the complaint presents the arresting and significant question whether

an insured under a liability policy may, in the event of the insolvency of the insurer, maintain an action against the reinsurer for the portion of the risk assumed by the reinsurer.

On September 13, 1929, the defendant General Reinsurance Corporation issued its policy of reinsurance to the Consolidated Indemnity and Insurance Company, whereunder on all policies to be written by the Consolidated and becoming effective during the existence of the reinsurance agreement, the General accepted by way of reinsurance on each such policy the excess of the primary liability assumed by the Consolidated, up to but not exceeding $240,000 as to any one person.

In 1930 the Consolidated issued its liability policy to Sofia Brothers, Inc., the plaintiff herein, under which the Consolidated indemnified Sofia Brothers, Inc., to the extent of $100,000 against liability arising from the operation of certain of Sofia's motor vehicles. At this time the reinsurance pact between the General and Consolidated had been written, and that pact does not specifically mention the policy of Sofia.

Thereafter, Augustino Russo was fatally injured by one of Sofia's trucks. His administratrix recovered a judgment against Sofia for $36,465. Subsequently, the Consolidated becoming insolvent, the Superintendent of Insurance was designated liquidator of its affairs.

Sofia then brought this action in equity against the General, the Superintendent of Insurance and the judgment creditor, on the theory that the reinsurance was procured for its benefit, and asking (a) that the judgment creditor be enjoined from issuing execution on her judgment; (b) that the liquidator be adjudged to have no beneficial title or interest in the sum of $31,465 payable by the General under the reinsurance policy, and that the liquidator receive same in trust and apply it in payment of the judgment to the extent of $31,465, and that the liquidator be compelled to make such application; (c) that the General be enjoined from paying any portion of the $31,465 to the liquidator or to any one else pending the determination of the action, and (d) that the plaintiff have judgment against the General for the $31,465 in partial satisfaction of Russo's judgment of $36,465.

The General's challenge to the legal sufficiency of the complaint poses the query: Who is entitled to the $31,465 — the amount concededly due from the General under its policy of reinsurance?

The General insists that the absence of privity between it and Sofia completely negatives Sofia's right to the fund, whilst Sofia maintains that the pivotal test is not that of privity but that

Sofia is entitled to the relief demanded on the broad principles of equity and the progressive application of the doctrine of *Lawrence* v. *Fox* (20 N. Y. 268).

A contract of reinsurance has been defined as " one of indemnity to the person or corporation reinsured and it binds the reinsurer to pay to the reinsured the whole loss sustained in respect to the subject of the insurance to the extent to which he is reinsured." (*Allemannia Insurance Co.* v. *Firemen's Insurance Co.*, 209 U. S. 326.)

This definition by the highest court supports the General's contention and rejects that of the plaintiff.

The courts of this State have likewise defined the relationship. Thus, in *Insurance Company of Penn.* v. *Park & Pollard Co.* (190 App. Div. 388; affd., without opinion, 229 N. Y. 631) it was appositely said (at p. 393): " It is well settled by the authorities and is conceded that there is not privity of contract between a reinsurer and the insured, or in other words between the plaintiff and the appellant, and that the reinsurer is not liable to the insured and is merely an indemnitor, liable only to the insurer whose risk is reinsured, and that a recovery on the policy of reinsurance inures not to the benefit of the insured but to the benefit of the general creditors of the reinsured." (Citing *Jackson* v. *St. Paul F. & M. Ins. Co.*, 99 N. Y. 124; *Hastic* v. *DePeyster*, 3 Caines, 190; *Herckenrath* v. *American Mutual Ins. Co.*, 3 Barb. Ch. 63; *Hoffman* v. *North British & M. Ins. Co.*, 35 Misc. 40.)

It is seen, therefore, that the question is not wholly fresh.

*Greenman* v. *General Reinsurance Corporation* (237 App. Div. 648; affd., without opinion, 262 N. Y. 701) involved a reinsurance policy and a situation substantially similar to the present. It was said: " The plaintiff, having suffered serious injuries in an automobile accident, had judgment against the owner who was insured against liability in the New Jersey Fidelity and Plate Glass Insurance Company. The owner being insolvent, plaintiff brought an action against the insurer under the provisions of section 109 of the Insurance Law, and judgment was rendered against it. That company became insolvent and went into liquidation in New Jersey without paying the judgment.

" Prior to the issuance of the liability policy and before the accident, the General Reinsurance Corporation had entered into a contract with the New Jersey company to reinsure its risks over and above certain specified amounts, which the latter retained as its risk. It was not the usual reinsurance policy, for, instead of reinsuring risks already insured, it was an agreement to insure future risks. We are not concerned here with the legality of that

kind of reinsurance, for in now suing the General Reinsurance Corporation the plaintiff as well as the defendant assumes that it is a legal contract.

" * * * It is a contract of indemnity with the New Jersey company in what appears to be the ordinary terms of reinsurance. Privity between defendant and the plaintiff is lacking. The insolvency of the reinsured does not change the nature of the obligation. (*Herckenrath* v. *American Mutual Ins. Co.*, 3 Barb. Ch. 63.) "

The *Greenman* decision appears to be controlling, but the plaintiff urges three points of differentiation: (1) That the *Greenman* case was at law whilst the present is in equity, (2) that the plaintiff there was the injured workman whilst here it is insured, and (3) that the *Greenman* case was grounded on section 109 of the Insurance Law whilst here a distinguishing situation is revealed.

These points of difference do not impress me as decisive or persuasive.

(1) True, the complaint here is in equity and avers that the reinsurance was for the benefit of this plaintiff. But that allegation is conclusory; the facts alleged do not sustain the conclusion. Labeling an action does not alter or affect its substance. The relief to which a plaintiff is entitled does not depend on what he calls the action, but on the facts which he sets forth.

(2) That the plaintiff here is the insured, whilst in the *Greenman* case he was the injured person, does not dictate a different conclusion. If we accept as controlling the plaintiff's theory of equity against that of privity, it cannot be disputed that the plaintiff in the *Greenman* case, as the injured person, should have been entitled to recover against the reinsurer. In the last analysis it is the injured person who is the beneficiary under these liability policies. So here, if this plaintiff can maintain this action, regardless of privity, then Russo could have maintained the action. A departure from the privity theory is a challenge to the conclusion reached in the *Greenman* case.

(3) If the plaintiff's theory of ultimate beneficiary be adopted, it would follow that injured persons could, in the first instance, sue insurers, regardless of section 109 of the Insurance Law; that provision would become unnecessary. Too, a beneficiary under a life insurance policy could sue the reinsurer. And so could creditors of a beneficiary. A principal on a bond could sue a reindemnitor. Once the doctrine is embraced to the extent here advanced its ramifications would seem boundless.

The progressive and basically just enunciation of *Lawrence* v. *Fox* (*supra*) is recognized. " The course of the late decisions is

to enlarge, not to limit, the effect of that case." (*Seaver* v. *Ransom*, 224 N. Y. 233, 240.) But when we balance the equities present here we do not find them all on the plaintiff's side. The result of doing what the plaintiff asks would be to constitute the plaintiff a preferred creditor of the Consolidated. It would deprive the general creditors of the Consolidated of recourse to the fund of $31,465. I perceive no just cause for awarding this plaintiff an advantage which would not accrue to the other creditors of the Consolidated, among them injured persons and next of kin of fatally injured persons. Equity should not be done to one person if it operates inequitably to others. It seems to me to be more in consonance with justice to distribute the equity as much and as widely as possible. That can be done here by constituting this $31,465 a fund in which all of Consolidated creditors, including the plaintiff, shall share.

In evaluating the equities there is the further consideration that Russo has not completely exhausted her remedies against Sofia. It may be that her judgment can be satisfied out of the assets of Sofia. Indeed, it is such consummation which Sofia, by this action, seeks to avert. It is unfortunate for Sofia to be shorn of the protection for which it paid. Unfortunate, too, is the plight of the other creditors of Consolidated. Equity should not strive to avenge the wrongs of one to the detriment of many equally wronged. Accordingly, the motion to dismiss the complaint must be, and is, granted.