REPUBLIC METALWARE COMPANY, Appellant, *v.* GENERAL REIN-SURANCE CORPORATION, Respondent.

Fourth Department, June 26, 1935.

*James O. Moore,* for the appellant.

*Charles F. Blair,* for the respondent.

SEARS, P. J.   The part of the judgment from which the plaintiff has appealed rests on a construction favorable to the defendant of certain clauses of a contract between the parties.   The contract is in terms one of reinsurance between the plaintiff, which is recited in the contract to be a duly qualified self-insurer authorized under the Illinois and New York Workmen's Compensation Acts to pay compensation direct, called in the contract the "Company," and the defendant, called in the contract the "Reinsurer."   The clauses which we must construe are as follows:

"Section I.   The Reinsurer hereby reinsures the Company for any amounts which the Company may be legally required to pay and shall pay as compensation for injuries (excluding medical attendance, hospital and administrative cost) sustained by any of its employees in excess of ($1.25) pure premium per $100.00 of payroll expended in any one twelve months' period by reason of the Workmen's Compensation Acts of the State of Illinois or New York, or the legal liability imposed on the Company for injuries to or death of its employees as the result of any accident or disaster.

"The liability of the Reinsurer hereunder is limited exclusively to actual compensation payments to employees excluding all medical, hospital and administrative charges incidental to the payment of compensation for injuries to employees of the Company.

"Section II.   As soon as possible after the completion of the first twelve months' period of this Contract and not later than fifteen months after completion of such first period of twelve months the Company shall advise the Reinsurer of its pure premium cost per $100.00 of payroll paid or incurred to its employees and covered hereunder during the said first period of twelve months.   In the computation of such pure premium or pure cost all fatalities, all permanent and total disability cases, and all other deferred payments shall be calculated in the customary manner and where such calculations are made and where estimates are necessary they shall be subject to check and verification by the Reinsurer.

"Should it be found that the pure premium as herein defined has exceeded $1.25 per $100.00 of payroll, the Reinsurer shall within fifteen (15) days of the determination of the amount remit to the Company the amount so exceeded subject always to final determination in the final settlement of all claims outstanding for the period covered."

The contract was dated November 19, 1925, and was effective from October 31, 1925, to October 30, 1926, inclusive.

Pure premium is a technical phrase referring to the ratio of cost to the employer of the total amount of compensation to its employees for injuries suffered during the effective period of the contract

to the total amount of payroll during the period. The total payroll of the plaintiff during the effective period of the contract was $812,241.30, and the amount of compensation payments excepted from the defendant's reinsurance obligation (125/10000) under the contract was $10,153.02. During the effective year of the contract there occurred a number of accidents resulting in injuries to employees, to whom compensation was paid directly by the plaintiff. During the period there also occurred an accidental injury to an employee named Amad Ali which on the 26th day of December, 1928, was adjudged by the State Industrial Board to have resulted in total disability. The order of the Industrial Board made on that day directed the plaintiff to pay the claimant compensation at the rate of $14.28 a week. Previous to the adjudication of permanent disability the plaintiff had also been paying the claimant a similar weekly sum on orders of the Industrial Board for temporary compensation. The total payments made by the plaintiff to all its employees for compensation for injuries received during the period equalled $1.25 on the basis of $100 of payroll, to wit, the sum of $10,153.02, on the 15th day of May, 1932. The only claim then remaining unpaid attributable to injuries received during the effective period of the contract quoted was the claim of Amad Ali. The plaintiff continued to pay Amad Ali his adjudged weekly compensation up to the date of the beginning of this action, May 5, 1933, and plaintiff has recovered judgment against the defendant (in the part of the judgment not appealed from) for a sum equal to the total payments actually made by the plaintiff to Ali from May 15, 1932, to the date of the beginning of this action. The question now before us relates solely to sums not yet actually paid by the plaintiff to the claimant Ali.

In a continuation proceeding before the State Industrial Board in June, 1932, relating to the Amad Ali claim when the State was claiming that the plaintiff had failed to deposit with the State sufficient security to warrant permitting the plaintiff to continue as a self-insurer in respect to the Amad Ali claim, the defendant entered an appearance and by its counsel opposed the entry of an order directing the payment by the plaintiff of the then present value of the Amad Ali claim into the aggregate trust fund under section 27 of the Workmen's Compensation Law. Despite this opposition such an order was entered, the direction having been made in an order dated June 23, 1932, whereby the plaintiff was required to pay the value of the Ali claim as of July 1, 1932, amounting to $14,217.55, into the aggregate trust fund. The plaintiff then had on deposit with the Industrial Commission securities

amounting in value to about $12,500 but failed to make the ordered payment into the aggregate trust fund as required by law. Thereafter judgment was recovered by the authorities of the State against the plaintiff for the amount which the plaintiff had been directed to pay into the aggregate trust fund. A levy was made, but an appeal was taken by the plaintiff from such judgment and a bond given and the levy released. The appeal has not been argued. It further appears that the amount of excess of compensation liability over the unreinsured amounts of liability was ascertainable, if not actually ascertained, at the latest on the 26th day of December, 1928, that being the date on which Ali was adjudged by the State Industrial Board to have been permanently disabled, and that the plaintiff has not been shown to have sought or required payment to it by the defendant of the amount of the excess liability under the provisions of section II of the contract.

In 1930 correspondence passed between the parties which the defendant urges as substantial evidence of a practical construction of the contract by the parties. On June 30, 1930, the plaintiff sent to the defendant a list of claims against it arising during the effective period of the contract. The claim of Amad Ali was listed as having resulted from an accident which occurred August 4, 1926, and under the heading " Compensation Paid " occurred the figures " $2,843.72 " to May 29, 1930. At the foot of the list, the following occurs:

" TOTAL COMP. PD.      $8702.37

$9734.84    Point of involvement.
 8702.37    Total Comp. pd. to 5/29/30

$1032.47    To be paid on Ali Case after 5/29/30 "

On July 8, 1930, the defendant wrote the plaintiff a letter containing the following: " Thank you for the information contained in your letter of June 30th.

" Are you not in error in figuring that $9,734.84 represents the point of involvement? Applying the pure premium cost of $1.25 to the reported payroll of $812,241.30 we make the point of involvement $10,153.02. As a total of $8,702.37 has been paid out by you for compensation benefits up to May 29, 1930, you will have to pay $1,450.65 on the Ali case after that date rather than $1,032.47 as reported by you. We will be obliged if you will recheck your figures and advise us if we are not correct.

" So far as the Ali case is concerned, we were advised by the John Hancock Company under date of November 15, 1927, that the Commission had requested you to file a C-8 and discontinue

compensation until the case could go to the Commission again, at which time an effort would be made to prove that the case should be either closed for a lump sum settlement or the rate of compensation reduced in proportion to a determined earning capacity. We would like to have a copy of the last order of the Commission and would also like to know how old Ali is, or was at the time of the accident."

On August 13, 1930, the plaintiff wrote the defendant a letter containing the following: " Answering your letter of July 8th, we find that you are correct in your point of involvement in the matter of compensation re-insurance coverage for the year ending November 1st, 1926. Accordingly we are changing our reserve to $1450.65 to be dispensed after May 29th, 1930, before calling upon you to take up the additional payments.

" In reference to the Ali Case, may we advise that C-8 was filed November 15th, 1927, in accordance with advices which you received from the Hancock Company. However, another examination was made when the case was called for hearing — Case continued as the claimant was totally disabled. On December 26th, 1928, after a number of hearings, the man was examined again by Dr. R. G. Bell, medical examiner for the Department of Labor. From that date Dr. Bell declared this claimant permanently and totally disabled. Copy of his report is attached hereto. In view of this fact, award was made accordingly.     *     *     * If there are any indications of a change in this case, we will promptly notify you."

The question which the parties answer diversely is this: Was the contract between the parties a contract of indemnity for loss actually suffered, that is, only for amounts actually paid, or was it a contract of indemnity against liability so that the plaintiff is entitled to recover irrespective of whether its liability has been discharged by payment?

The contract between the plaintiff and the defendant is not wholly a conventional contract of reinsurance because it is only by a fiction that the plaintiff can be considered an insurer at all. The arrangement for so-called self-insurance under the Workmen's Compensation Law is only one for an approval of credit so that the employer may be suffered to make compensation payments personally to his injured employees without furnishing covering insurance either by the State fund or by an independent company. The contract between plaintiff and defendant was one to indemnify the plaintiff for its loss or liability (as the contract is viewed) resulting from accidental injuries to its employees. The contract, however, is phrased in terms accurately applicable only to

reinsurance in the strict sense of the word. We are guided in construction, therefore, by principles applicable to the form of the contract which the defendant phrased and the plaintiff accepted in respect to the matters involved.

The rule is firmly established that a contract for reinsurance is primarily one of indemnity to the person or corporation reinsured and binds the reinsurer to pay to the reinsured the whole loss sustained by him whether or not the reinsured has first paid the loss to the party first insured. To permit a construction of such a contract so as to confine its obligations to an indemnity for obligations discharged by payment, such must clearly and unequivocally appear to have been intended upon the terms of the instrument of reinsurance itself. (*Hone* v. *Mutual Safety Ins. Co.*, 1 Sandf. 137; affd., 2 N. Y. 235; *Herckenrath* v. *American Mut. Ins. Co.*, 3 Barb. Ch. 63; *Hastie* v. *DePeyster*, 3 Caines, 190; *Blackstone* v. *Alemannia Fire Ins. Co.*, 56 N. Y. 104; *Allemannia Fire Ins. Co.* v. *Firemen's Ins. Co.*, 209 U. S. 326; *Matter of Eddystone Marine Ins. Co.*, L. R. [1892] 2 Ch. 423.) The contract of reinsurance is entirely independent of any right which the original insured has against the reinsured. There is no privity between the original insured and the reinsurer. (*Jackson* v. *St. Paul Fire & Marine Ins. Co.*, 99 N. Y. 124; *Insurance Co. of Pennsylvania* v. *Park & Pollard Co.*, 190 App. Div. 388; affd., 229 N. Y. 631.) The defendant bases its claim of a clear and unequivocal intention to confine the obligation of the defendant to indemnity for payments made, upon the words " to pay and shall pay " in the first sentence of section I quoted above, and to the word " payments " in the second paragraph of section I above quoted as it occurs in the sentence " the liability of the Re-insurer hereunder is limited exclusively to actual compensation payments to employees excluding all medical, hospital and administrative charges incidental to the payment of compensation for injuries to employees of the Company." On the other hand, the plaintiff contends that these words are at most ambiguous and that the obligation to pay for liabilities incurred, even though not liquidated, is made clear by section II above quoted. Under the terms of that section after the close of the effective twelve months' period and within fifteen months thereafter, the reinsured is to advise the reinsurer of the total amount of its liability to its employees for injuries suffered during the effective periods of the policy; and in this computation the contract particularly provides for the inclusion of the estimated amount of liability for all fatalities, all permanent and total disability cases, and all other deferred payments which are to be " calculated in the customary manner."

There is no question as to what is the customary manner of calculation. All that we need notice is that deferred payments are to be included in the computation and that when the calculation is made, from the total of liabilities reported, both paid and to be paid, there is to be deducted the amount of the liabilities not reinsured. Then comes the significant sentence "should it be found that the pure premium * * * has exceeded $1.25 per $100.00 of payroll, the Reinsurer shall within fifteen (15) days of the determination of the amount remit to the Company the amount so exceeded subject always to final determination in the final settlement of all claims outstanding for the period covered." In other words, if the total losses, both paid and to become payable, exceed the total amount not reinsured, that is, $10,153.02, the company is to pay the difference to the reinsured within fifteen days. Here is a specific obligation to pay the amount of losses incurred and calculated whether paid or to be paid, excepting amounts not specifically reinsured, subject to final readjustment after payment when final settlement occurs. The final clause is manifestly without significance here. In view of the specific provision just referred to, the first section should be construed, if possible, in conformity with it. The plaintiff contends that the first sentence of section I means and should be construed to mean that the reinsurer reinsures the company for any amounts which the company may be legally required to pay, and for any amounts which the company shall pay as compensation for injuries by reason of the Workmen's Compensation Acts of the State of Illinois or the State of New York, or by reason of the legal liability imposed on the company for injuries to or death of its employees as the result of any accident or disaster (excluding medical attendance and administrative cost) in excess of $1.25 pure premium per $100 of payroll expended in any twelve months' period. Thus, the word "amounts" is claimed to include the amount the reinsured may be required to pay and amounts which it shall pay, and that the two classes of amounts are separate and the words "may be legally required to pay and shall pay" do not refer to an entirety to every item or amount of obligation. Further, the word "payments" in the second paragraph of section 1 is construed by the plaintiff as used only to differentiate the net amounts of compensation or loss payable to the claimants from the incidentals of medical, hospital and administrative charges, and has no relation to actual expenditures of money. If section I stood alone in this instrument, it is certainly doubtful whether such a construction of the first sentence of section I, as is above suggested, would be permissible. But, whether or not it would then be permissible, we find the second

section so clear and unambiguous, and so distinctly in conformity with the construction generally applicable to reinsurance contracts that we construe the whole contract as imposing an obligation upon defendant to indemnify plaintiff against calculated liability to the amount specified even if not yet discharged by payment.

The defendant urges, however, that the contract between the parties has been practically construed as constituting only an indemnity for actual losses, that is, payments, and urges further that facts are shown which result in an estoppel against the plaintiff to claim any other construction, and further that plaintiff has breached the contract by failing to sustain its position as a self-insurer.

None of these contentions has validity. While it is true that the plaintiff has not been diligent in demanding payment from the defendant, and seems to have acquiesced in the appearance of the defendant in the Ali continuation proceeding, in June, 1932, and in its correspondence apparently assumed that defendant would discharge its obligation under the contract by paying Ali's weekly adjudicated compensation, still there is no act on the part of the plaintiff disclosed by the record inconsistent with the claim that it is now making. Even if the defendant had after May 15, 1932, paid the compensation to Ali direct, this would not have been in accord with the present claims of either party to this appeal, and hence would not be a construction of the contract *favorable* to either plaintiff or defendant but rather a substituted method of meeting defendant's obligation to the plaintiff.

Further, as to the alleged breach of the contract by the plaintiff in failing to continue as a self-insurer, we find no such implied obligation and even if there was such a covenant it would be entirely independent of defendant's obligation to indemnify plaintiff. It was wholly immaterial to the defendant whether or not the plaintiff continued as a self-insurer. Its obligation was in nowise affected by any such default by the plaintiff occurring after the close of the effective year of the contract.

We reach the conclusion, therefore, that the plaintiff is now entitled to recover on the record before us, under the express terms of section II of the contract, the amount of excess of plaintiff's liability over the unreinsured liability, less, of course, the part thereof for which judgment has already been granted.

As the defendant moved for the direction of a verdict, it conceded that no question of fact was involved and the trial court was authorized on the record before us, on the view we take of the contract, to direct a verdict for the plaintiff. (*Colligan* v. *Scott*, 58 N. Y. 670; *Gregory* v. *Mayor, etc., of N. Y.*, 113 id. 416,

affd. 11 N. Y. St. Repr. 506 [46 Hun, 676]; *Jacobus* v. *Jamestown Mantel Co.*, 211 N. Y. 154; *Davey Tree Expert Co., Inc.*, v. *Daniell*, 135 Misc. 269.) What the trial court could have done this court can do. (*United Paper-Board Co.* v. *Iroquois Pulp & Paper Co.*, 249 N. Y. 588, affg. 217 App. Div. 253.) No issue of fact is involved which in the interest of justice requires a new trial.

The judgment so far as appealed from should be reversed on the law, with costs, and judgment should be ordered in favor of the plaintiff and against the defendant for the sum of $14,217.55, with interest from July 1, 1932, less $819.76, with interest thereon from the 19th day of December, 1934.

The order denying motion for a new trial as to the second and third causes of action should be affirmed, without costs.

All concur. Present — SEARS, P. J., EDGCOMB, THOMPSON, CROSBY and LEWIS, JJ.

Judgment so far as appealed from reversed on the law, with costs, and judgment directed in favor of the plaintiff against defendant for $14,217.55, with interest from July 1, 1932, less $819.76, with interest from December 19, 1934, with costs. Order denying motion for a new trial as to the second and third causes of action affirmed, without costs.