OPINION OF THE COURT
Harold Baer, Jr., J.
The Mercantile & General Reinsurance Co., PLC. (M&G) moves pursuant to CPLR 4404 for an order setting aside the *312 jury verdict rendered in this case in favor of defendant Spanno Corporation (Spanno) and dismissing the complaint.
This large and complicated case concerns a dispute about reinsurance. Put very briefly, Spanno was in the business of providing equipment valuation. Customers would purchase equipment that Spanno valued and if the equipment could not be sold at the valuation price, Spanno would pay the difference to the customer. This activity required that Spanno purchase insurance to cover its valuations. Such insurance was obtained from a number of companies, including Colonial Assurance Company (Colonial) and Union International Insurance Company (Union). Reinsurance, which is coverage obtained by an insurer to lessen its risk, was furnished by M&G. At a certain point, M&G refused to continue to provide reinsurance and sought a declaratory judgment that it had no obligation to do so since the reinsurance was obtained by fraud. Spanno claimed to have been destroyed by M&G’s refusal to pay and counterclaimed for damages.
The jury returned a verdict in favor of Spanno. The jury found that Spanno was the third-party beneficiary of the reinsurance contract. M&G argues that this determination was error as a matter of law.
A contract of reinsurance is one between the reinsurer and the insurer/reinsured. The individual or entity that is the other party to the basic contract of insurance (the insured) is in privity with the insurer, not with the reinsurer. An agreement of reinsurance is a contract of indemnity by which the reinsuring company, in return for a part of the premium, undertakes to reimburse the insurance company/reinsured for a loss sustained on risks insured by the latter. (Turner Constr. Co. v Seaboard Sur. Co., 85 AD2d 325, 327 [1st Dept 1982]; National Ins. & Guar. Corp. v Vander Veer, 66 Misc 2d 862 [Sup Ct 1971]; 13A Appleman, Insurance Law and Practice § 7694 [1976].) Absent other specific provisions, the reinsurer has no obligation to the original insured and the latter has no right of action against the former. This is so even if the insurer becomes insolvent. (Prince Carpentry v Cosmopolitan Mut. Ins. Co., 124 Misc 2d 919, 931 [Sup Ct 1984]; Skandia Am. Reinsurance Corp. v Schenck, 441 F Supp 715, 724 [SD NY 1977]; 19 Couch, Insurance 2d § 80:69 [1983].) Thus, the insured cannot claim the status of a third-party beneficiary of the reinsurance contract. (Sofia Bros. v General Reinsurance Corp., 153 Misc 6, 9 [Sup Ct 1934]; Skandia Am. Reinsurance Corp. v Schenck, supra.) Frequently the insured will not know *313 of the existence of a reinsurance contract, but even if there is knowledge, such an awareness will not assist an insured who later decides to sue the reinsurer. (Squibb-Mathieson Intl. Corp. v St. Paul Mercury Ins. Co., 44 Misc 2d 835, 837 [Sup Ct 1964] [Nunez, J.]; see also, Republic Metalware Co. v General Reinsurance Corp., 245 App Div 232 [4th Dept 1935]; Insurance Co. v Park & Pollard Co., 190 App Div 388 [1st Dept], affd 229 NY 631 [1920]; China Union Lines v American Mar. Underwriters, 755 F2d 26, 30 [2d Cir 1985].)
When is the law different? "The contract of reinsurance may contain a provision whereby the reinsurer binds himself to pay to the policyholders any loss for which the insurer may become liable. Under the common-law rule as established in most of the United States * * * a third party for whose benefit a contract is made is allowed to enforce such contract by suit against the promisor. Therefore the reinsurer who has promised to pay the losses accruing under the original policies directly to the holders of such policies will be liable to a suit by the original insured under the contract of reinsurance.” (Vance, Insurance § 207, at 1071 [3d ed 1951], citing Lawrence v Fox, 20 NY 268 [1859]; see also, Greenman v General Reinsurance Corp., 237 App Div 648, 649 [2d Dept], affd 262 NY 701 [1933] ["The cases in which an insured may recover from a reinsurer are those where the language of the policy itself indicates the intent to become directly liable.”]; Squibb-Mathieson Intl. Corp. v St. Paul Mercury Ins. Co., supra; 19 Couch, Insurance 2d § 80:70.)
Although M&G submitted a request to charge on the third-party beneficiary theory, it did not thereby concede the issue it seeks to raise now. M&G moved at trial for a directed verdict because, among other grounds, the alleged reinsurance did not run to Spanno and give it a right of action. M&G excepted to the giving of a charge on third-party beneficiary on this basis. M&G’s position was that if, despite its arguments, the case were not thrown out on a contract theory, then its formulation on the third-party beneficiary issue should be charged.
Though I decided to put the issue to the jury, I did so without resolving the question at hand. I agree now with M&G that it is entitled to judgment as a matter of law. The jury heard and weighed the evidence presented by Spanno about its contacts with M&G and the nature of its program. It was undoubtedly persuaded by these contacts, as analyzed by Spanno’s very eloquent and able counsel, Mr. Hall, that *314 Spanno should be allowed to recover on a third-party beneficiary basis. But the question, I conclude, is a matter of law for the court; the court must decide whether the language of the reinsurance policy is legally sufficient to create a right to sue in the third-party/insured. Against the backdrop of all the proof in this case, I conclude that the language relied upon here is not sufficient to do so. Spanno points to wording in the cover notes that in the event of a failure of the original reinsured (i.e., the insurance companies), M&G "will take over the handling of claims and other matters direct with the original assured [Spanno].” This language indicates a willingness on M&G’s part to facilitate the processing of claims in the event of a failure of the insurer, but significantly does not use the words one would naturally expect had the intention been that urged by Spanno — namely, that M&G would pay the assured directly or assume the insurer’s liability to the insured. (See, Turner v National Sur. Co., 176 App Div 219 [1st Dept 1917].) Nor does the clause state that Spanno would have a direct right of action against M&G. This language is not sufficient to take this case outside the general rule on reinsurance discussed above.
At trial the witness Mr. Gumbel, though speaking about English practice, explained that the clause about handling of claims is deficient as a so-called "cut-through” and his explanation was persuasive. Mr. Gumbel stated what I think the American cases in this area mean to say — that a proper "cut-through” would provide expressly that the assured would be paid by the reinsurer if necessary or could sue the reinsurer directly. The clause here falls short of that. Then what does the clause mean? It means quite clearly that the reinsurer will work with the assured in assessment of the claim, settlement, salvage, a third-party proceeding; in short, that the reinsurer would assist in the technical procedures required to establish a claim. That claim, if established, would then be made against the liquidator of the insurer, with the reinsurer paying to the reinsured that portion that is its allotment under the reinsurance agreement. To provide for the handling of claims when the insurer fails is not to create an empty ceremony.
In support of its position, Spanno also points to language in assumption endorsements whereby M&G "agrees that it will make payment directly to the loss payee and/or the insured [Spanno] as their interests may appear”. This language does go farther toward providing the kind of clear statement that *315 would be needed if Spanno were to have a claim against M&G. However, the endorsements were issued in the case of some transactions but not others. The loss payees in those cases in which the endorsement appears were previously paid off by M&G. The fact that these provisions were included in certain instances and not others is a further demonstration that the clause in the cover notes alone did not create a "cut-through”. The fact that there was no standard "cut-through” clause in every instance means that there was no right in Spanno to sue in every instance or in this instance.
Accordingly, the verdict must be set aside on the third-party beneficiary theory and a verdict directed in favor of M&G.