(No. 35465.—

BETTY DONOHO, Appellant, *vs.* O'CONNELL'S, INC.—(ILLINOIS PUBLIC AID COMMISSION, Appellee.)

*Opinion filed January 22, 1960.*

PERCIVAL THOMPSON, and RICHARD A. LEWIN, both of Chicago, for appellant.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, A. ZOLA GROVES, and MYRTLE STRYKER, Assistant Attorneys General, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Betty Donoho recovered a judgment of $20,000 in a personal injury action against O'Connell's, Inc. Appeals to the Appellate Court and to this court followed, (13 Ill. App. 2d 250; 13 Ill.2d 113; 19 Ill. App. 2d 512,) and the judgment was ultimately affirmed. The matter is now before us again, and the present issue concerns the validity of a statutory lien asserted by the Illinois Public Aid Commission against the proceeds of the judgment.

In July of 1957, while her case was pending on appeal, Betty Donoho began to receive disability assistance from the Illinois Public Aid Commission. Between July of 1957 and March of 1959, when her judgment became final, she received $1615 in disability assistance grants from the Commission. She received no payments from the Commission on account of medical treatment or hospital care, nor did the Commission make any payment on her behalf for those purposes. Nevertheless, the Commission asserted a statutory

charge against the judgment in the amount of $2137, a total that includes the sum of $1615 which was paid to her as disability assistance, and also the sum of $522 on account of "medical capitation payments."

Upon the plaintiff's petition to adjudicate the validity of the asserted lien, (Ill. Rev. Stat. 1959, chap. 23, par. 819,) the circuit court found it to be valid, overruling her contention that the statutes giving rise to the lien violated her rights under the equal protection clause of the Federal constitution, and the special legislation clause of the constitution of Illinois. She has appealed directly to this court.

The pertinent provision of section 8—19 of the Public Assistance Code, upon which the Commission's charge is based, is as follows: "The Commission shall have a charge upon all claims, demands and causes of action for injuries to an applicant for or recipient of assistance for the total amount of assistance provided for the recipient and his dependents from the time of injury to the date of recovery upon such claim, demand or cause of action. * * * On petition filed by the Commission or by the recipient, or by the defendant, the court, on written notice to all interested parties, shall adjudicate the rights of the parties and enforce the charge. * * * The provisions of this section shall be inapplicable to and no charge shall exist upon any claim, demand or cause of action arising under (a) the 'Workmen's Compensation Act'; * * * (b) the 'Workmen's Occupation Diseases Act'; * * * (c) 'An Act requiring compensation for causing death by wrongful act, neglect or default * * *.'" Ill. Rev. Stat. 1959, chap. 23, par. 819.

The "medical capitation payment" is based upon section 8—17 of the Public Assistance Code. (Ill. Rev. Stat. 1959, chap. 23, par. 817.) That section provides for the establishment of the "Medical Payment Fund" into which the Commission pays monthly an amount equal to the estimated

cost of medical services and supplies to be provided to all recipients of assistance. The average estimated monthly cost *per capita* is called the "medical capitation payment." It is charged against each recipient's assistance account and it is the amount recoverable from a recipient under section 8—19 for medical services and expenses whether a greater or lesser amount was in fact expended in providing medical care for the particular recipient.

At the outset we meet the Commission's contention that the plaintiff is barred from challenging the constitutionality of these sections because she has received benefits under other provisions of the statute. But it is only the voluntary acceptance of benefits under a statute that bars a subsequent attack upon its validity. Acceptances that were induced by economic pressures much less severe than those which must have operated upon the plaintiff in this case have been regarded as the result of economic duress, and so as involuntary. (*People ex rel. Carpentier* v. *Treloar Trucking Co.* 13 Ill.2d 596; *Chicago and Eastern Illinois Railway Co.* v. *Miller*, 309 Ill. 257. See *Frost* v. *Railroad Com. of California*, 271 U.S. 583, 70 L. ed. 1101.) It follows that the plaintiff is not precluded, on this ground, from asserting constitutional defenses to the statutory charge.

A somewhat similar point is raised by the Commission with specific reference to the plaintiff's attack upon the validity of the provisions relating to medical capitation payments. Section 8—17 provides: "Every * * * recipient * * *, as a condition to his right to receive * * * assistance, shall be deemed to have assented to the provisions of this paragraph providing for the charging of his assistance account with the medical capitation payments * * *." The Commission argues that since there is no constitutional right to public assistance, the legislature may validly condition its receipt upon assent to the payment of a medical capitation charge. We find it unnecessary to con-

sider the contention thus advanced, for in our opinion the statute does not authorize the charge that was here sought to be imposed.

Both the plaintiff and the Commission assume that the statute imposes a medical capitation charge in the sum of $522, even though the plaintiff did not in fact ever receive any medical aid whatsoever at public expense. They argue the validity of section 8—17 on the basis of that assumption. But the judicial power to determine the constitutionality of legislation is to be exercised only when it is essential to the disposition of a case. Here the purpose ascribed to the General Assembly is an unusual one, and one which raises doubts as to the statute's validity. We are unwilling to assume that purpose unless the language of the statute clearly asserts it.

We do not find any language in section 8—17 that unmistakably states the assumed purpose. That section says that "In any action under this Code for the recovery of assistance against a recipient or his estate, the medical capitation payments so charged during any month or months shall be the total amount recoverable *in respect to the services and supplies covered by such payments notwithstanding that a greater or lesser amount has in fact been expended during any such period for such purpose* from the Medical Payment Fund, * * *." (Italics supplied.)

While this language is not entirely clear, it does seem to contemplate that recipients of assistance, who have received medical services and supplies covered by medical capitation payments, are required to reimburse the Commission for the average cost of services of that kind supplied to all those who receive assistance, rather than for the amount expended on behalf of the particular recipient. But it does not say that one who received no medical care whatsoever shall nevertheless be liable to reimburse the Commission for the average cost of medical services furn-

ished to others. Where the statute imposes an average charge instead of the amount expended, it carefully points out that the charge is to be made "notwithstanding that a greater or lesser amount has actually been expended." If the intention was to go further, and to impose a charge "notwithstanding that no amount has actually been expended," a similar specific statement would normally be anticipated. Of course it is possible to argue that no expenditure whatever is a "lesser amount" than has actually been expended. But we are reluctant to employ such a refined construction, (*cf. Commissioner of Internal Revenue v. Acker,* 361 U.S. 87, 4 L. ed. 2d 127, (1959),) particularly when the end result is to raise constitutional issues. We hold, therefore, that the Commission's charge, to the extent that it was based upon medical capitation payments, was not authorized by the statute.

The statute clearly does authorize a lien for repayment of assistance actually received by the plaintiff. That lien applies to "all claims, demands and causes of action for injuries." Amounts recovered under the Workmen's Compensation Act, the Workmen's Occupational Diseases Act and the Wrongful Death Act are expressly excepted. The plaintiff points to these exceptions, and to the fact that repayment is not demanded from those "who come into wealth by reason of inheritance, hard work, fortunate speculations, or in any other fashion." And she charges that these exceptions and omissions make the statutory classification discriminatory and arbitrary, in violation of the equal protection clause of the Federal constitution and the special legislation clause of the Illinois constitution.

It is true that the statute does not provide comprehensively for a lien upon all potential assets that might be or become available to a recipient. But the validity of legislation does not depend upon complete comprehensiveness, nor does the constitution require that it conform to an ideal pattern of orderliness. It is enough if the selection of sub-

jects for inclusion and exclusion rests upon a rational basis. (*People* v. *Warren*, 11 Ill.2d 420, *Union Cemetery Ass'n* v. *Cooper*, 414 Ill. 23.) We think that such a basis exists here.

The Workmen's Compensation Act, the Workmen's Occupational Diseases Act and the Wrongful Death Act fix maximum limits of recovery, regardless of the extent of the actual loss that was sustained. Payments under the Workmen's Compensation and Occupational Diseases acts are ordinarily made periodically and liens upon those payments are forbidden. (Ill. Rev. Stat. 1959, chap. 48, pars. 138.21, 172.56.) A similar policy is expressed in the Wrongful Death Act, which directs that recoveries under it should be for the exclusive benefit of the widow and next of kin of the deceased. (Ill. Rev. Stat. 1959, chap. 70, par. 2.) The limited recoveries under these statutes do not include an allowance for pain and suffering, an element of damage which looms large in personal injury cases. It is common knowledge that the amounts recovered under these statutes are far smaller than amounts recovered in common-law actions. These are genuine differences of situation, which will support legislative classification. Furthermore, the small amount of the periodic payments under the Workmen's Compensation and Occupational Diseases acts might make collection a difficult and expensive task, and the legislature could properly act upon this practical consideration.

Nor is it discriminatory to assert a lien upon recoveries for injuries while not demanding repayment from persons who "come into wealth by inheritance, hard work, fortunate speculations or in any other fashion." The possibility of acquisition of future wealth by any of the enumerated means is not the equivalent of a present claim, and it need not be treated in the same way. Indeed, in each of the enumerated instances, the assertion of a claim of future reimbursement might have the effect of increasing, rather than decreasing, the cost of public assistance to those in need. The "other" means of coming into wealth, to which

the plaintiff refers, are not specified. It is impossible, therefore, to measure them in terms of the legal and practical differences that would be relevant in determining the validity of the legislative classification. The statute is not vulnerable to the attack made upon it by the plaintiff.

Finally, the plaintiff suggests that the Commission has no lien in this case because the statutory charge covers only assistance provided to her from "the time of injury to the date of recovery," and she had recovered her judgment in the trial court before she received any assistance. As the plaintiff points out, there are circumstances under which the word "recovery" can refer to the entry of judgment. But to give the word that meaning in this case would be to nullify the legislative purpose, for the lien would terminate at the precise moment that it became most significant.

For the reasons stated, the judgment of the circuit court is reversed and the cause is remanded, with directions to enter a judgment declaring that the Commission has a valid lien in the sum of $1615 upon the judgment in favor of the plaintiff and against O'Connell's, Inc., a corporation.

*Reversed and remanded, with directions.*