THE PEOPLE *ex rel.* JAMES BAYLOR, Director of the Department of Insurance, Plaintiff, *v.* HIGHWAY INSURANCE COMPANY, Defendant—(HERMAN JACKSON *et al.,* Petitioners-Appellants, *v.* THE PEOPLE *ex rel.* JAMES BAYLOR, Director of the Department of Insurance, Defendant-Appellee.)

(No. 55350; ■■■■■■■)

First District—December 13, 1972.

*Rehearing denied March 7, 1973.*

BURMAN, J., dissenting.

Asher, Greenfield, Gubbins and Segall, of Chicago, (Eugene I. Pavalon, Sidney Robin, of counsel,) for appellants.

William P. Nolan, of Pretzel, Stouffer, Nolan & Rooney, of Chicago, (Joseph B. Lederleitner, of counsel,) for appellee.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

In this action the petitioners, Herman Jackson and Joseph Schaden, are workmen's compensation claimants who sought to vacate an injunction entered in the Circuit Court of Cook County, which restrains all persons from obtaining judgments against the property or assets of the insolvent insurer of their employer and from pursuing any action which would interfere with the liquidator's exclusive right, title and interest to funds recovered under a so-called reinsurance agreement, discussed later herein.

The issues on appeal are whether workmen's compensation claims are subject to the "insolvency clause" of the insurance agreement and whether the injured workmen may proceed directly against the insurer to recover the proceeds of excess insurance.

On December 7, 1963, Herman Jackson, an employee of Advance Salvage Corporation, was injured in the course of his employment. He filed an application for adjustment with the Industrial Commission against Advance Salvage and Highway Insurance Company, its insurance carrier. An award was originally entered on January 9, 1967, but on July 22, 1968, the Commission entered a corrected decision for $61,090.41 for total blindness in both eyes.

On July 19, 1963, Joseph Schaden, an employee of J. Kaplan & Sons, Inc., was injured in the course of his employment. He filed an application for adjustment of claim with the Industrial Commission against J. Kaplan & Sons, Inc., and Highway Insurance Company, his employer's

insurance carrier. On May 10, 1967, the arbitrator entered an award of $46,786.11.

On July 6, 1967, the Director of the Department of Insurance of the State of Illinois filed a complaint seeking to place Highway Insurance Company in liquidation, and on July 28, 1967, the court entered a decree that Highway be liquidated and dissolved.

On February 20, 1969, the Director of Insurance filed a petition seeking a court determination that the liquidator had exclusive claim to the proceeds of an insurance agreement entered into by Highway as the ceding insurer and Peerless Insurance Company, the excess insurer, and on March 20, 1969, the court so held. Under the terms of the insurance agreement between Highway and Peerless, Peerless was to pay the portion of a compensation award over $25,000 to a maximum of $1,000,000 for each accident. The agreement also contained an "insolvency clause" which provided that "In the event of insolvency of the Company, the reinsurance shall be payable to its liquidator or receiver * * * ."

On March 28, 1969, a petition on behalf of Herman Jackson was filed seeking to vacate and set aside the injunction order entered on March 20, and requesting that an order be entered permitting him to pursue and enforce his claim for amounts above $25,000 directly against Peerless. On April 2, 1970, Joseph Schaden filed a similar petition requesting the same remedy. Both claimants recognize that, as to Highway, they are general creditors for the $25,000 claims chargeable to Highway.

On June 26, 1970, the court denied the petitions of Jackson and Schaden and entered an order providing that the funds of the excess insurer due under the agreement between Highway and Peerless "* * * belong to and are the property of the Liquidator and not Petitioners and said Petitioners have no interest therein and do not have any right to any of the relief sought in the said Petitions * * * ." This appeal is taken from that order.

■■ The petitioners contend that funds payable by an insurer by reason of a workmen's compensation award must be paid to the injured workman without diminution caused by the claims of others. They argue that the Workmen's Compensation Act as construed by the cases shows the strong and compelling policy of this state to preserve the full value of the workmen's compensation awards for the exclusive benefit of the injured workmen. Section 21 of the Workmen's Compensation Act (Ill. Rev. Stat., ch. 48, sec. 138.21), provides:

> "No payment, claim, award or decision under this Act shall be assignable or subject to any lien, attachment or garnishment, or be held liable in any way for any lien, debt, penalty or damages."

In *Lasley v. Tazewell Coal Co.* (1921), 223 Ill. App. 462, the court refused to enforce an attorney's lien and stated:

"[T]he purpose of the legislature is evident; it undoubtedly intended that no lien of any kind should be allowed to intervene to prevent the workman from receiving the benefit of the monthly compensation awarded to him."

Also, see *East Moline Works Credit Union v. Linn* (1964), 51 Ill. App.2d 97, and *McCormick v. McDougal-Hartmann Co.* (1969), 111 Ill. App.2d 346.

The Director of Insurance points out the insolvency clause in the agreement states the excess insurance shall be paid to the liquidator and cites cases which hold a reinsurance agreement creates no privity between claimants and the reinsurer. In *Vial v. Norwich Fire Insurance Society* (1913), 257 Ill. 355, the court stated:

"Re-insurance is defined to be a contract that one insurer makes with another to protect the first insurer from a risk he has already assumed. It is not denied such contracts are lawful and valid. The ordinary contract of re-insurance operates solely between the insurer and the re-insurer and creates no privity whatever between the re-insurer and the person originally insured. The contract of insurance and that of re-insurance remain totally distinct and unconnected, and the re-insurer is in no respect liable, either as surety or otherwise, to the person originally insured. (24 Am. & Eng. Ency. of Law,—2d ed.—p. 249.)'" Also, see *Baltica Insurance Co. v. Carr* (1928), 330 Ill. 608; and *Gill v. Peerless Casualty Co.* (1958), 18 Ill.App.2d 338.

However, these cases do not involve workmen's compensation. If the "insolvency clause" of the excess insurance agreement is given effect, the claims of Jackson and Schaden would be inferior to preferred claims of certain creditors of Highway (see sections 807, 814, and 817 of the Illinois Insurance Code, Ill. Rev. Stat., ch. 73). More importantly, their claims would be on a par with those involving common law judgments which are not restricted in amount as are compensation awards. In *Donoho v. O'Connell's, Inc.* (1960), 18 Ill.2d 432, the court specifically recognized that protecting proceeds of a workmen's compensation settlement from encumbrances is a valid legislative purpose because of the limited nature of the recoveries. The court stated:

"The limited recoveries under these statutes do not include an allowance for pain and suffering, an element of damage which looms large in personal injury cases. It is common knowledge that the amounts recovered under these statutes are far smaller than amounts recovered in common-law actions. These are genuine

differences of situation, which will support legislative classification."

Although reinsurance agreements have been construed to guarantee the policies of the insured (*Weil v. Federal Life Insurance Co.* (1914), 264 Ill. 425), the language of the agreement in the instant case indicates the intention of the parties was for Peerless to assume liability in excess of the first $25,000 rather than assume or guarantee Highway policies. In *Carmack v. Great American Indemnity Co.* (1948), 400 Ill. 93, the court held the Workmen's Compensation Act is a part of the insurance contract. Section 4(a) of the Act (Ill. Rev. Stat., ch. 48, sec. 138.4(a) ), provides in part:

> "Secondly, the employer shall submit evidence satisfactory to the Commission that his entire liability for the compensation provided for in this Act will be secured. Any provisions in any policy, or in any endorsement attached thereto, attempting to limit or modify in any way, the liability of the insurance carriers issuing the same except as otherwise provided herein shall be wholly void."

It follows that when Peerless made an agreement with Highway it adopted the protective provisions of Section 28 of the Act and the "insolvency clause" was rendered void. Furthermore, the term "reinsurance" is not accurate, the Peerless policy being original and direct insurance over and above $25,000 up to $1,000,000, and said policies were filed with the Industrial Commission and so approved by the Commission pursuant to law.

Section 4(g) of the Workmen's Compensation Act (Ill. Rev. Stat., ch. 48, sec. 138.4(g)), provides in part:

> "In the event the employer does not pay the compensation for which he is liable, then an insurance company, association or insurer which may have insured such employer against such liability shall become primarily liable to pay to the employee, his personal representative or beneficiary the compensation required by the provisions of this Act to be paid by such employer. The insurance carrier may be made a party to the proceedings in which the employer is a party and an award may be entered jointly against the employer and the insurance carrier."

In the case at bar the primary purpose of the agreement was to guarantee payment of any amount awarded over $25,000 up to $1,000,000 and consequently Peerless was brought within the meaning of the term "insurer" of Section 4(g), which allows a direct action by the policyholder.

In effect, the claimant became a direct beneficiary of the Peerless insurance contract, and there is no logical reason why the award of

workmen's compensation should be invaded and diluted for the benefit of creditors of Highway, many of whom hold judgments as the result of tort actions and do not have the protection of the Workmen's Compensation statute.

■■ The Director of Insurance contends that permitting the petitioners to recover would disrupt the orderly liquidation of the estate, because under Article XIII, sec. 187, et seq., of the Illinois Insurance Code (Ill. Rev. Stat. 1969, ch. 73, sec. 799, et seq.), all claimants and other creditors against a liquidation estate will be treated equally without preference or priority among claimants and creditors. However, the awards of the petitioners were entered prior to the liquidation of Highway, and their claims against Peerless became vested at that time and are the obligation of Peerless. A subsequent dissolution of Highway can not affect their right of recovery from Peerless.

For these reasons the order of the Circuit Court of Cook County entered on June 26, 1970, is reversed, and the injunction restraining the petitioners from asserting their claims to funds under the reinsurance agreement is vacated and set aside.

Reversed.

ADESKO, J., concurs.

Mr. JUSTICE BURMAN dissenting:

I do not agree with the majority's conclusions that Peerless assumed direct liability to the policy holders of Highway and that the holder of a workmen's compensation award has a greater right than other claimants against the estate of an insolvent insurer. I believe that the trial court correctly held that the liquidator of Highway Insurance is alone entitled to receive the proceeds of the reinsurance agreement.

The facts which give rise to this appeal are set forth in detail in the majority opinion. Briefly they are as follows: The appellants are holders of workmen's compensation awards whose employers insured their workmen's compensation liability with Highway Insurance Company ("Highway"). Highway in turn entered into a reinsurance agreement with Peerless Insurance Company ("Peerless") under the terms of which Peerless agreed to indemnify Highway for all workmen's compensation claims paid in excess of $25,000. In July, 1967, Highway became insolvent, and its liquidation was ordered pursuant to a complaint filed by the Director of Insurance. In March, 1969, the Circuit Court of Cook County decreed that the liquidator of Highway has exclusive right and title to the proceeds of reinsurance treaties entered into by Highway and enjoined all persons from asserting any claims against such pro-

ceeds. The appellants petitioned the trial court to vacate the injunction order and for leave to file a third party action against Peerless. The petition was denied, and this appeal followed.

Reinsurance is generally defined as a contract made by one insurer with another to indemnify the first against a risk which it has already assumed. In such a situation the primary insurer becomes an insured of the reinsurer. (*Vail v. Norwich Union Fire Insurance Society*, 257 Ill. 355; *Pioneer Life Insurance Co. v. Alliance Life Insurance Co.*, 374 Ill. 576.) A reinsurance treaty is an agreement between two insurance companies in which one agrees to cede and the other to accept reinsurance business according to the terms of the agreement. (*Pioneer Life Insurance Co. v. Alliance Life Insurance Co.*, 374 Ill. 576.) It is well established that insurance contracts, like other contracts, are to be construed according to the sense and meaning of their terms, and if free from ambiguity are to be understood in their plain and ordinary sense. (*Midwest Dairy Products Corp. v. Ohio Casualty Insurance Co.*, 356 Ill. 389.) In my opinion, the agreement between Highway and Peerless in the present case is plainly a reinsurance treaty, and I do not believe that Peerless assumed any primary liability to Highway's policy holders.

The agreement contains the following pertinent provisions:

"ARTICLE I

Classes of Business Reinsured:

[Highway] will reinsure with [Peerless] and [Peerless] will accept reinsurance from [Highway] upon the specific terms and conditions set forth herein and in Exhibits 'A' and 'B' attached hereto and made a part of this Agreement * * *.

* * *

ARTICLE III

Liability Reinsured:

The actual payment in cash by [Highway] of any loss shall be a condition precedent to any recovery under this Agreement, and subject to such condition, the liability of [Peerless] shall follow that of [Highway], and shall be subject within the applicable policy limits in all respects to all the general and special stipulations, clauses, waivers and modifications of [Highway's] policy, binder, or other undertaking, and any endorsements thereon.

In the event of insolvency of [Highway], this reinsurance shall be payable to its liquidator or receiver on the basis of the claim or claims allowed against [Highway] by any court of competent jurisdiction or any justice or judge thereof, or by any receiver or

liquidator having authority to determine and allow such claims, provided, however, that the liquidator or receiver shall first give written notice of the pendency of the claim or claims and the reinsurer hereunder shall have all rights, as more fully set forth in Section 173 of the Illinois Insurance Code as amended July 24, 1945.

\* \* \*

## EXHIBIT A

Excess Reinsurance of
Third Party Bodily Injury (including Medical Payments) and Property Damage Liability Business; Illinois Liquor Control Law Liability Business; Workmen's Compensation and Employers' Liability Business.

### *Section 1*

Cover:
As respects business of [Highway] (falling within the scope or the classes set forth in the title of this Exhibit and not hereinafter excluded) in force at and becoming effective (including renewals) at and after 12:01 A.M., January 1, 1958, [Highway] shall retain for its own account liability for:

1. As respects Workmen's Compensation and Employers' liability business, the first Twenty-five Thousand Dollars ($25,000)

\* \* \*

of loss due to claims (relating to one or more policies and regardless of the number of insured involved) arising out of each accident, whether such claims involve any one or any combination of such classes of business; and [Peerless] shall indemnify and reimburse [Highway] for all losses paid in cash by [Highway] in excess of the retentions set forth in Items 1 and 2 above as respects each acident, subject to a maximum liability of One Million Dollars ($1,000,000) to [Peerless] as respects each accident."

The terms of the agreement are unambiguous, and it is apparent that Highway and Peerless entered into nothing more than a reinsurance treaty of the type commonly employed in the insurance industry. Of particular significance is the language in the section dealing with coverage:

"As respects Workmen's Compensation and Employers' Liability business \* \* \* [Peerless] shall indemnify and reimburse [Highway] for all losses paid in cash by [Highway] in excess of [$25,000] \* \* \* as respects each accident \* \* \*."

By its terms the agreement is one of indemnity and contemplates the

payment in full of loss claims by Highway with subsequent reimbursement by Peerless for the payment of claims which exceed $25,000. This is the normal character of reinsurance, and I believe that to conclude, as does the majority, that Peerless assumed primary liability for claims in excess of $25,000 to Highway's policy holders is a strained and wholly unwarranted interpretation of the agreement.

As Peerless is a reinsurer of the risks assumed by Highway, its liability, if any, to Highway's insureds must be considered in that light. It is now well established in Illinois that "[t]he ordinary contract of reinsurance operates solely between the insurer and the reinsurer, and creates no privity whatever between the reinsurer and the person originally insured. The contract of insurance and that of reinsurance remain totally distinct and unconnected, and the reinsurer is in no respect liable * * * to the person originally insured." (*Vail v. Norwich Fire Insurance Society*, 257 Ill. 355.) As the court in *Vail* points out, such a rule grows logically out of the realization that the contract is one of indemnity and is created for the benefit of the ceding insurer and not the benefit of its policy holders.

The precise question of whether policy holders of the primary insurer can maintain a direct action against a reinsurer was considered in *Gill v. Peerless Casualty Co.*, 18 Ill.App.2d 338. The reinsurance agreement construed by the court in *Gill* was identical to that in the present case. In holding that such an action could not be maintained the court stated:

> "By none of the provisions of the agreement did [the reinsurer] obligate itself to pay any loss sustained by a policy holder of the Blackhawk Company to such policy holder. Its agreement was to pay the Blackhawk Company but only after the Blackhawk Company had paid a loss on a claim in excess of $5,000. The express language of this agreement makes it an excess reinsurance contract and as such its provisions are not enforcible by appellant."

The theory that policy holders of the primary insurer are third party beneficiaries of the reinsurance agreement has also been rejected. See *People ex rel. Hershey v. Cosmopolitan Insurance Co.*, 89 Ill.App.2d 225.

The appellants in the present case are holders of workmen's compensation awards. Their right of action against Highway is established by Section 4 of the Workmen's Compensation Act (Ill. Rev. Stat. 1971, ch. 48, par. 138.4), which permits holders of unpaid awards to proceed directly against their employer's liability insurer and makes the insurer primarily liable for the amount of the award along with the employer. Thus the appellants here are claiming through their employers who are the policy holders. The employers in the present case could have maintained an action against Highway, but not against Peerless, and I see no reason why the appellants should be allowed to do so.

Moreover, the agreement in the present case expressly provides that in the event of the insolvency of Highway the reinsurance shall be payable to its liquidator or receiver and mentions section 173 of the Insurance Code. In 1965, section 173 was divided into sections 173.1, 173.2 and 173.3, which embrace the same material. Sections 173.2 and 173.3 (Ill. Rev. Stat. 1971, ch. 73, sec. 785.2 and 785.3), provide in part:

"No credit shall be allowed as an admitted asset or as a deduction from liability, to any ceding company for reinsurance unless the reinsurance * * * agreement provides that payments by the assuming company shall be made directly to the ceding company *or to its liquidator, receiver,* or statutory successor, except where the contract specifically provides another payee of such reinsurance in the event of the insolvency of the ceding company * * *." (Emphasis added.)

Since the enactment of section 173, it has been customary for reinsurance agreements to contain a so-called "insolvency clause" of the type suggested by the statute. Thus the agreement in the present case provides for payment of the reinsurance to the liquidator or receiver of Highway in the event of its insolvency. Speaking of an identical clause, the court in *Cosmopolitan* said:

"This contract appears to us to be clear and unambiguous. It needs no construction. It is an agreement whereby an insurance company reinsured risks that it had previously underwritten. The object and purpose in ceding part of these risks was to protect itself. By this contract an insurance company purchased insurance. *A loss payable to it in the event of insolvency became payable to the liquidator.* The language of the policy on this point could not be more clear nor concise." (Emphasis added.)

The inclusion of the insolvency clause is further evidence of the relationship contemplated by the parties. By reversing the trial court's decision the majority in essence holds this provision to be unenforceable and casts doubt upon the validity of sections 173.2 and 173.3.

I also do not believe that anything in the Workmen's Compensation Act requires an exception to the general rules set forth above. The court in *Carmack v. Great American Indemnity Co.,* 400 Ill. 93, established the principle that the provisions of the Workmen's Compensation Act are incorporated in any contract to insure an employer's workmen's compensation liability. However *Carmack* involved a dispute between an employer and his insurer over whether the insurer was liable for the extra portion of an award paid because the claimant was a minor and thus did not concern reinsurance. The rule of *Carmack* may be necessary to protect the policy embodied in the Workmen's Compensation Act;

however, there is no reason to extend it to cases involving reinsurance. The reinsurance contract is an undertaking completely separate from that of the contract of primary insurance and its purpose is the protection of the primary insurer.

Furthermore, there are compelling reasons for upholding the terms of the agreement in the present case. The insolvency of an insurance company creates a hardship for many classes of persons. Perhaps foremost among these are the policy holders who have valid claims against the company under their contracts of insurance. The proceeds of the reinsurance agreement in the present case are general assets of Highway which should inure to the benefit of all persons who have claims against it. By granting a preferred status to the appellants in the present case the majority is undermining the public policy embodied in the Insurance Code and is establishing a precedent which will jeopardize the orderly liquidation of insolvent insurers.

For the foregoing reasons I would affirm the judgment.