(No. 45796.—

THE PEOPLE *ex rel.* JAMES BAYLOR, Director of Insurance, Appellant, v. HIGHWAY INSURANCE COMPANY.—(Herman Jackson *et al.*, Appellees.)

*Opinion filed July 1, 1974.—Rehearing denied Sept. 26, 1974.*

KLUCZYNSKI, J., dissenting.

Joseph B. Lederleitner, of Pretzel, Stouffer, Nolan & Rooney, of Chicago, for appellant.

Asher, Greenfield, Gubbins and Segall, of Chicago

(Eugene I. Pavalon and Sidney Robin, of counsel), for appellees.

Richard V. Houpt, of Pedersen & Houpt, of Chicago (Anthony M. Lanzone, of counsel), for *amicus curiae* Peerless Insurance Co.

John G. Smith, R. R. McMahan, and John J. Berwanger, of Lord, Bissell & Brook, all of Chicago (Donald J. Greene, Geoffry D. C. Best, of LeBoeuf, Lamb, Leiby & McRae, of New York, Ronald A. Jacks and Charles W. Havens III, of Washington D. C., of counsel), for *amici curiae* Peter L. Foden-Pattinson *et al.*

MR. JUSTICE WARD delivered the opinion of the court:

The Highway Insurance Company (hereafter Highway) and the Peerless Insurance Company (Peerless) on December 30, 1957, entered into a reinsurance treaty or agreement, by the terms of which Peerless became the reinsurer under a number of types of policies issued by Highway, including its workmen's compensation policies. The treaty provided that Highway would retain for its account liability its workmen's compensation policies to the extent of the first $25,000 of loss from a claim arising out of an accident, and the reinsurer Peerless agreed that it would indemnify and reimburse Highway for any loss paid by Highway in excess of the first $25,000 of a compensation award. It was agreed under the treaty that in the event of insolvency of Highway the reinsurance was to be payable to its liquidator or receiver "on the basis of the claim or claims allowed against Highway by any court of competent jurisdiction or by any receiver or liquidator having authority to determine and allow such claims."

On July 6, 1967, the Director of Insurance of the State of Illinois (the Director) filed a complaint in the circuit court of Cook County for the liquidation of Highway. An order was entered dissolving Highway and

appointing the Director to "take possession of the property, books, records, business and affairs of Highway Insurance Company for the purpose of liquidating same."

On February 20, 1969, the Director filed a petition seeking an order that he as liquidator had exclusive claim to the proceeds of all reinsurance agreements and treaties which had been entered into by Highway. On March 20, 1969, a decree was entered which provided that the liquidator had exclusive "right, title and interest" to all funds due under reinsurance agreements which Highway had entered into as the ceding insurer, and the decree restrained all persons from instituting any action or proceeding in any court or agency which sought to interfere with the liquidator's exclusive right, title and interest to funds recoverable under reinsurance agreements or treaties entered into by Highway.

Highway had issued workmen's compensation liability policies in favor of the Advance Salvage Corporation and J. Kaplan & Sons, Inc. In July 1968 Herman Jackson, an employee of Advance Salvage, was given an award of approximately $61,000 by the Industrial Commission of Illinois because of an injury he sustained in the course of his employment, and in 1968, also, Joseph Schaden was awarded approximately $46,000 by the Commission against his employer J. Kaplan & Sons, Inc., for an injury he received in his employment.

On March 28, 1970, and April 2, 1970, respectively, Jackson and Schaden filed petitions to vacate and set aside the injunction which restrained them from proceeding against Peerless as to the portions of their judgments in excess of $25,000. On June 26, 1970, the petitions were denied and the appellate court, with one judge dissenting, reversed the circuit court. (9 Ill. App. 3d 845.) We granted leave to appeal.

The nature of reinsurance was described by the court in *People ex rel. Hershey v. Cosmopolitan Insurance Co.* (1967), 89 Ill. App. 2d 225, in which case another division

of the appellate court held contrary to the result which the appellate court reached here. The court, quoting from Appleman, Insurance Law and Practice, said at page 228:

"Reinsurance, to an insurance lawyer, means one thing only—the ceding by one insurance company to another of all or a portion of its risks for a stipulated portion of the premium, in which the liability of the reinsurer is solely to the reinsured, which is the ceding company, and in which contract the ceding company retains all contact with the original insured, and handles all matters prior to and subsequent to loss. The true reinsurer is merely an insurance company or underwriter which deals only with other insurance companies as its policyholders." 13 Appleman, Insurance Law and Practice, sec. 7681, at 433-434 (1943).

It was stated by this court in *Vial v. Norwick Union Fire Insurance Society* (1913), 257 Ill. 355, 358, 362:

"Re-insurance is defined to be a contract that one insurer makes with another to protect the first insurer from a risk he has already assumed. It is not denied such contracts are lawful and valid. 'The ordinary contract of re-insurance operates solely between the insurer and the re-insurer, and creates no privity whatever between the re-insurer and the person originally insured. The contract of insurance and that of re-insurance remain totally distinct and unconnected, and the re-insurer is in no respect liable, either as surety or otherwise, to the person originally insured.' ***

\* \* \*

*** There is no assumption of any liability of the Indemnity Company to the policyholders, nor any agreement on the part of defendant in error [the reinsurer] to pay any loss sustained by the policyholders. It is strictly a contract to

indemnify the Indemnity Company against any losses it might sustain, but defendant in error assumed none of the liabilities of that company to its policyholders. The Indemnity Company continued liable, as before, to settle with its policyholders, and there is nothing in the contract to indicate that it was made for the benefit of the Indemnity Company's policyholders. It created no privity whatever between the Indemnity Company's policyholders and defendant in error, and therefore no right exists in plaintiff in error to maintain an action against defendant in error."

This view that the contract of insurance is separate from a contract of reinsurance and that the reinsurer does not have any liability to the person originally insured is, in the absence of special circumstances, not present here (see *Fontenot v. Marquette Casualty Co.* (1971), 258 La. 671, 247 So. 2d 572), the almost unanimous view of courts which have considered the question. See *Melco System v. Receivers of Trans-American Insurance Co.* (1958), 268 Ala. 152, 105 So. 2d 42; *Crozier v. Lenox Mutual Insurance Ass'n* (1961), 252 Iowa 1176, 110 N.W.2d 403; *Winneshick Mutual Insurance Ass'n v. Roach* (1965), 257 Iowa 354, 132 N.W.2d 436; *In re Estate of Moebius* (1950), 231 Minn. 219, 43 N.W.2d 104; *Moseley v. Liverpool & London & Globe Insurance Co.* (1913), 104 Miss. 326, 61 So. 428; *Sofia Bros. v. General Reinsurance Corp.* (Sup. Ct. 1934), 153 Misc. 6, 274 N.Y.S. 565; *Pink v. American Surety Co. of New York* (1940), 283 N.Y. 290, 28 N.E.2d 842; *Squibb-Mathieson International Corp. v. St. Paul Mercury Insurance Co.* (Sup. Ct. 1964), 44 Misc. 2d 835, 254 N.Y.S.2d 586; *In re Security General Insurance Co. v. General Insurance Co.* (1966), 82 S.D. 47, 140 N.W.2d 676; *Commercial Casualty Insurance Co. v. Columbia Gas Co.* (1938), 22 Tenn. App. 656, 125 S.W.2d 493; *United States v. Federal Surety Co.* (4th Cir. 1934), 72 F.2d 964; *Taggart v. Keim* (3d Cir. 1939), 103 F.2d

194; *Citizens Casualty Co. v. American Glass Co.* (7th Cir. 1948), 166 F.2d 91; *United States Fire Insurance Co. v. Smith* (1935), 231 Ala. 169, 164 So. 70, 103 A.L.R. 1468; *Empire State Insurance Co. v. Collins* (1874), 54 Ga. 376; *Stickel v. Excess Insurance Co. of America* (1939), 136 Ohio St. 49, 23 N.E.2d 839; *Insurance Co. of Pennsylvania v. Park & Pollard Co.* (1920), 190 App. Div. 388, 180 N.Y.S. 143, *aff'd*, 229 N.Y. 631, 129 N.E. 936; see Couch, Insurance, sec. 801:66; 13 Appleman, Insurance Law and Practice, secs. 7681, 7694; Richards on Insurance, sec. 36, at 124; 103 A.L.R. 1486a.

It appears that only in Missouri (*First National Bank of Kansas City v. Higgins* (Mo. 1962), 357 S.W.2d 139) and in Michigan (*Federoff v. Ewing* (1971), 386 Mich. 474, 192 N.W.2d 242) have there been contrary holdings. In *Federoff,* which involved the very reinsurance treaty between Highway and Peerless we are considering here, the court permitted workmen's compensation claimants to recover directly from Peerless. The court stated *inter alia* that the reinsurance contract was expressly subject to provisions in the Michigan Workmen's Compensation Act which nullified language in the treaty that would have permitted the reinsurer to deny liability.

It is clear that the employers of Jackson and Schaden could not have proceeded in an action against Peerless. Certainly then, the employees, who would found their claims on the workmen's compensation policies issued by Highway to their employers, cannot recover. No rights in their favor against Peerless should rise from the reinsurance agreement. By the agreement Highway ceded part of its risks to protect itself against high and perhaps crushing liability, and Peerless accepted designated parts of those risks. The manifested intention of the parties was that the operation and effect of the agreement were to be limited to the parties to it. It must be observed also that the agreement explicitly provided that "in the event of insolvency of the Company [Highway], the reinsurance

shall be payable to its liquidator or receiver ***.'' The insertion of such an insolvency provision is common in reinsurance treaties because of sections 173.2 and 173.3 of the Illinois Insurance Code (Ill. Rev. Stat. 1971, ch. 73, pars. 785.2, 785.3), which state in part:

> "173.2. No credit shall be allowed as an admitted asset or as a deduction from liability, to any ceding company for reinsurance unless the reinsurance ***
>
> 173.3. *** agreement provides that payments by the assuming company shall be made directly to the ceding company or to its liquidator, receiver or statutory successor, except where the contract specifically provides another payee of such reinsurance in the event of the insolvency of the ceding company ***.'' (In *Federoff*, 386 Mich. 474, no mention was made as to whether Michigan has a similar statutory provision.)

We cannot accept the employees' argument that section 21 of the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.21) requires that this insolvency clause be voided on public policy grounds and that the employees be allowed to proceed against Peerless. Section 21 provides in part:

> "No payment, claim, award or decision under this Act shall be assignable or subject to any lien, attachment or garnishment, or be held liable in any way for any lien, debt, penalty or damages.''

Certainly the provision demonstrates a policy to protect an employee's rights under the Act, but in no way can it be read as allowing a claimant who has been given an award under the Act to recover from a reinsurer of his employer's carrier.

We must reject, too, the contention of the employees that section 4(a) of the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.4(a)) renders the insolvency clause void and that section 4(g) of the Act confers a right on the employees to bring an action directly against Peerless. Section 4(a) (par. 138.4(a)) provides in part:

"*** The employer shall submit evidence satisfactory to the Commission that his entire liability for the compensation provided for in this Act will be secured. Any provisions in any policy, or in any endorsement attached thereto, attempting to limit or modify in any way, the liability of the insurance carriers issuing the same except as otherwise provided herein shall be wholly void."

The section obviously has no relation to reinsurance agreements which a carrier might make. There is no basis for considering that the reinsurance agreement, including the insolvency clause, can be construed as an attempt to limit the policy issued by Highway in favor of its assureds.

Section 4(g) of the Act provides in part:

"In the event the employer does not pay the compensation for which he is liable, then an insurance company *** which may have insured such employer against such liability shall become primarily liable to pay the employee."

The section simply does not have pertinency to the question we are considering. The reinsurance agreement was a contract between Highway and Peerless; it did not create any liability on the part of Peerless to the employers insured by Highway or to their employees.

Considering the limitations on recoveries for injury under the Workmen's Compensation Act · (*Donoho v. O'Connell's, Inc.*, 18 Ill.2d 432, 438) this result may not be fully equitable, but it is required under our present statutes.

For the reasons given, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

MR. JUSTICE KLUCZYNSKI, dissenting:

I must respectfully dissent from the majority opinion which has effectively deprived Herman Jackson of the meager workmen's compensation award given to him after

he sustained a fractured skull and was totally and permanently blinded as the result of an industrial accident in 1963. Joseph Schaden is in a similar position because his injuries, which were sustained in 1963, resulted in his complete disability, rendering him wholly and permanently incapable of work.

This court has held that the underlying purpose of workmen's compensation statutes here and in other States is to provide financial protection to workers whose earning power is temporarily diminished or terminated as a result of injuries arising out of and in the course of their employment. (*Board of Education v. Industrial Com.*, 53 Ill.2d 167, 171.) In *Grasse v. Dealer's Transport Co.*, 412 Ill. 179, 190, the court stated that the "primary purpose of the Workmen's Compensation Act is to afford employees and their dependents a measure of financial protection." As one authority has observed, the Workmen's Compensation Act was designed to provide timely compensation and lessen the amount of litigation formerly attendant to industrial injuries. It was also designed "to provide reasonable and necessary medical, surgical and hospital services, a definite basis for compensation during a period of temporary total disability, a fixed schedule of benefits for disabilities or death resulting from accidental injuries or death arising out of and in the course of employment ***." (Angerstein, Illinois Workmen's Compensation (rev. ed. 1952), at 24.) The majority opinion has clearly frustrated this intent.

In *Donoho v. O'Connell's, Inc.*, 18 Ill.2d 432, we recognized that there was no constitutional prohibition created in permitting an award under the Workmen's Compensation Act to be free from the liens of the Public Aid Commission. This court noted the fact that a claimant, by asserting claims under the Act, receives limited and smaller recoveries than those returned in common-law actions, and he can claim no allowance for pain and suffering. This genuine difference supported the fact that

workmen's compensation recoveries may be treated differently from others. 18 Ill.2d at 438.

Therefore the provisions of the Workmen's Compensation Act are explicitly comprehensive in an attempt to insure payments of claims. Section 4(a) (Ill. Rev. Stat. 1969, ch. 48, par. 138.4) requires the employer to post satisfactory guarantees that claims will be paid, and section 21 (Ill. Rev. Stat. 1969, ch. 48, par. 138.21) provides that awards are to be free of all liens, attachments, or other encumbrances. It is apparent that the policy underlying the Workmen's Compensation Act is to insure that claimants are guaranteed an expeditious recovery to which they are entitled.

In *Federoff v. Ewing* (1971), 386 Mich. 474, 192 N.W.2d 242, where the same Highway and Peerless reinsurance treaty was involved, the general view expressed in *Fontenot v. Marquette Casualty Co.* (1971), 258 La. 671, 247 So. 2d 572, that a claimant of the reinsured may have no rights against the reinsurer was rejected. The Michigan court held that the reinsurance provision creating a condition precedent of actual payment by Highway of its share of a recovery before Peerless might be liable as reinsurer was to be given no force and effect. The court in *Federoff* reasoned that the underlying public policy expressed in the Michigan compensation statute rendered the aforesaid reinsurance provision unenforceable. It relied upon the statutory provision that specifically brought all workmen's compensation policies within the ambit of its compensation act and which further voided all policy provisions inconsistent therewith.

Illinois does not have a provision similar to that of Michigan construing all compensation insurance to be subject to its provisions, although this court has stated that The Workmen's Compensation Act is part of every insurance contract (*Carmack v. Great American Indemnity Co.*, 400 Ill. 93, 96). Moreover, section 4(a)(3) is comparable to that of Michigan. It provides, in part, "Any provisions in

any policy, or in any endorsement attached thereto, attempting to limit or modify in any way, the liability of the insurance carriers issuing the same except as otherwise provided herein shall be wholly void." (Ill. Rev. Stat. 1969, ch. 48, par. 138.4(a)(3).) I would hold that the result in *Federoff* is correct. This would negate that portion of the Peerless-Highway policy requiring payments by Peerless to the liquidator and further requiring that Highway pay each claimant as a condition to Peerless's duty to provide any amount to Highway in excess of $25,000.

It therefore follows that the next issue would be whether Jackson and Schaden may proceed directly against Peerless for recovery of amounts in excess of $25,000. Section 4 of the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.4) states, in pertinent part:

> "(a) Any employer who shall come within the provisions of Section 3 of this Act, and any other employer who shall elect to provide and pay the compensation provided for in this Act shall:
>
> * * *
>
> (3) Insure his entire liability to pay such compensation in some insurance carrier authorized, licensed, or permitted to do such insurance business in this State. Every policy of an insurance carrier, insuring the payment of compensation under this Act shall cover all the employees and the entire compensation liability of the insured: ***
>
> Any provisions in any policy, or in any endorsement attached thereto, attempting to limit or modify in any way, the liability of the insurance carriers issuing the same except as otherwise provided herein shall be wholly void.
>
> * * *
>
> (g) ***
>
> In the event the employer does not pay the compensation for which he is liable, then an insurance company, association or insurer which may have insured such employer against such liability shall become primarily liable to pay to the employee *** the compensation required by the provisions of this Act to be paid by such

employer. The insurance carrier may be made a party to the proceedings in which the employer is a party and an award may be entered jointly against the employer and the insurance carrier."

Section 4(g) permits a claimant to bring an action directly against the "insurer" to sustain this right, and I am of the opinion that Peerless must be considered as such to the extent of the excess coverage it assumed. In effect, Peerless was liable to pay any amount exceeding $25,000 up to $1,000,000. While its policy provided that payment was to be made only upon Highway's payment of its share, such provision would be inequitable and allow Peerless to avoid its obligations to plaintiff. Additionally, Peerless agreed to assume a liability as an insurer of portions of awards or judgments entered pursuant to various common-law and statutory proceedings. The terms of the reinsurance agreement also allowed Peerless to retain the right to control the management of certain claims against Highway if the claims exceeded $25,000 and Peerless could not be held chargeable with any expenses resulting from an adverse verdict unless the trial had been held with the specific consent of Peerless. Finally, Peerless reserved the right to decline or cancel any individual risk by giving Highway 30 days' notice.

I believe that the aforementioned statutory and insurance policy provisions must be construed so as to classify Peerless as an "insurer" (to the extent of its excess coverage) within the meaning of section 4(g). Thus, effect would be given to the liberal interpretation of the Workmen's Compensation Act as intended by the legislature (*Vaught v. Industrial Com.*, 52 Ill.2d 158, 165) and the expressed public policy would be served by allowing these claimants the right to recover a substantial portion of their awards from Peerless.

Various arguments pertaining to preference among creditors are raised by the Director and *amici*. They primarily claim that by permitting recovery in this instance

Jackson and Schaden will be given a preference to distribution of assets among other creditors of Highway thereby creating an unmanageable situation in the liquidation matter. The question posed, however, is not whether the assets of an insolvent insurance company are to be preferentially divided among the creditors but rather whether the funds owed by Peerless as a result of the awards entered on behalf of Jackson and Schaden will become assets of Highway subjecting them to distribution by the Director. Since claimants would be able to proceed directly against Peerless, the dire consequences envisioned by the aforesaid parties would not occur.

I would therefore affirm the judgment of the appellate court.